[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This is an action for dissolution of marriage and other relief brought to the Judicial District of Danbury. Many of the facts that give rise to this action are not in dispute. The plaintiff and the defendant, whose maiden name was Carolina Amaral, were married in Danbury, Connecticut, on July 2, 1977. The plaintiff and defendant have resided continuously in the State of Connecticut for at least twelve months immediately prior to the date the complaint was filed. The marriage between the parties has broken down irretrievably without any reasonable prospects of reconciliation. There are two minor children issue of this marriage, Paul Michael Moraes, born March 27, 1982, and CT Page 8235 Ashley Lynn Moraes, born June 10, 1985. No other minor children have been born to the defendant wife since the date of marriage of the parties. Neither party has received state assistance.
The court finds from the evidence presented that each party is equally at fault for the breakdown of the marriage. The plaintiff suffered from dizziness, chest pains and had anxiety attacks and suffered from stress, all of which was as a result of aggressive physical behavior by the defendant. The plaintiff commenced having a physical relationship with a female companion shortly after the parties separated, and has continued that relationship up to the present time.
The plaintiff graduated high school in 1976. He then went to computer technical school from which he received a certificate in 1977. In 1977, he commenced employment at an assembly line where he was paid close to minimal wages. After three months, he then obtained new employment where he remained for approximately one year. He then obtained employment as a computer operator working on an hourly basis where he remained for approximately four months. That employer went through a Chapter 11 bankruptcy. He then obtained employment at Emery Air Freight for approximately nine years commencing 1979 at an annual salary of approximately $21,000. He left that employment in 1988 when he was earning approximately $34,000 annually. He left that employment because he had not received any salary increases for the prior two year period. He was then employed at a new position commencing at an annual salary of approximately $35,000 as a network operator. He remained in that employment from August of 1988 for the next approximately eight year period. He was earning $53,000 when he left that employment to go into consultation in March of 1996. He was then employed at an annual salary of $60,000 as an assistant engineer and remained in that employment for approximately sixteen to seventeen months. He was then let go from that employment as a result of the amount of time he was spending in court due to this pending dissolution action. He was then unemployed for approximately three weeks. He then moved to Illinois where he moved in with his girlfriend at her parent's to seek employment. He obtained employment in Illinois on November 3, 1997 two weeks after he moved to Illinois, and he continues in that employment with an annual salary of approximately $55,000 a year.
The plaintiff is thirty-nine years old. He is in very good health although he does have some knee problems. He has had CT Page 8236 surgery on each knee. His most recent surgery was approximately four years ago. His right knee gives him more trouble than the left knee. The right knee needs a total knee replacement.
In addition to his annual salary of $55,000 per year, the plaintiff receives a $125 monthly gross check as a laptop computer bonus. He will receive that until the year 2000. The purpose of that check is that he had to purchase a laptop as part of his employment and it is to reimburse him for that cost. It is shown as part of his gross income on his financial affidavit He presently has health insurance under his employment that covers himself and the two children of the marriage.
In 1997, the plaintiff had total wages of $54,993. The plaintiff is paid twice a month. His year-to-date pay for the period ending May 15, 1998 was $23,541.60. He presently resides with his female domestic partner and the two children from the marriage in Illinois. She contributes towards one-third of the rent, electricity, gas and cable TV. The plaintiff and defendant both agree that for the purpose of determining child support guidelines, that those contributions should not be included in the plaintiff's gross income in order to determine child support obligations under the guidelines.
The plaintiff's financial affidavit, dated June 4, 1998, lists a 1988 BMW motor vehicle. The court finds that the fair market value of that vehicle is $10,000. The plaintiff claims that money is still owed to his father as a result of funds advanced by his father for the purchase of that vehicle. The plaintiff's financial affidavit does not show any debt due to his father.
The parties own gold coins with a value of $5000. The coins are located in a safe in the family home basement. The coins were accumulated for the benefit of the children. The plaintiff owns guns with a value of $500 and tools with a value of $1000. He has shares of stock for a total value of $965. He has life insurance through Nationwide of $30,000 and through his employer of $55,000. The Nationwide policy has a cash surrender value of $2500. He owns a 1996 Toyota with a value of $15,000 and a loan balance of $8000 and an equity of $7000. He purchased that vehicle in October of 1996. He has a checking account at the First Chicago Bank in his name only with a balance of $200, and a savings account in his name and that of the defendant with a balance of $4532. The balance due in the Nutmeg Federal savings CT Page 8237 account when the plaintiff vacated the family residence was $6997.99. The only withdrawal from the account was made on June 13, 1996 in the amount of $2500.
The $2500 was withdrawn from that account in June of 1996 for the purchase of a stove and refrigerator for the defendant, which the plaintiff agreed to.
In March, 1997, the plaintiff withdrew $18,300 from his IRA. Approximately $3700 of the funds were used for his additional tax liability due to having withdrawing the IRA. Part of the money was used to repay a loan allegedly made by his companion's parent to him when he purchased his Toyota motor vehicle. That vehicle was purchased for $21,000 in October of 1996 in Illinois. It cost him approximately $800 to have the vehicle transported to Connecticut.
The $18,300 that the plaintiff withdrew from the IRA in part was used towards paying $2500 to his first attorney in this dissolution and an additional $2000 to his present attorney.
During the time the parties lived together, the plaintiff held some part-time employment. He worked for the Danbury News-Times for eight years. His last annual income at that part-time employment was approximately $10,000. He also was employed part-time in 1996 at the Danbury Police Department earning approximately $5200 annually when he was last employed there. He is presently not working any part-time employment in Illinois.
The plaintiff has an IRA with a balance of $35,644.41 as of June 4, 1998. He has not made any contributions to that IRA since March of 1996. He had a 401K plan with his prior employment, Pitney Bowes, and was subsequently rolled into an IRA. He did not have any pension benefits with Pitney Bowes.
The family home located at 7 Deer Park Road, Danbury, Connecticut, was purchased in 1983 at a cost of $95,000. The defendant's parents contributed $20,000 towards that cost. Ten thousand ($10,000) dollars has since been paid back to them. The plaintiff's parents contributed $15,000 towards that cost. The court finds that the fair market value of the family home is $200,000. It has a mortgage balance of $24,222 and an equity of $175,778. During the course of the marriage, the plaintiff's father also furnished funds to the parties to be used to acquire a new furnace for approximately $2500 to $3000, and for roofing CT Page 8238 and siding of the home for approximately $5000.
The plaintiff vacated the family home in March of 1996. He then lived with his parents for approximately one and a half to two months. His female companion moved from Illinois to Connecticut in June of 1996 and moved in with him at that time. The plaintiff rented a condominium in June of 1996, and his female companion moved in with him from Illinois at the end of June of 1996. At that time she was paying one-half of the rent. The defendant is a high school graduate. She went to hairdressing school but did not complete that school. She has been employed by the same employer since the parties married. She has always been an hourly employee. She is forty years old.
The defendant is in good health.
The defendant is employed by the Barden Corporation as a quality control inspector. She worked full-time during the marriage. In the calendar year 1995, the parties had combined wages of $76,749. In that calendar year, the plaintiff had gross taxable wages from Pitney Bowes, Inc. of $41,992.25, and wages from the parent company of the Danbury News-Times (Ottaway Newspapers, Inc.) of $7893.10. The defendant had gross taxable wages of $26,864.27. In the calendar year 1996, the defendant had gross taxable wages of $26,286. In the calendar year 1997, the defendant had gross taxable wages of $36,948.
Although not shown on her financial affidavit, the defendant has a Christmas club account with approximately $500 in it. She also has a vacation club account with approximately $1000 in it.
The defendant has jewelry with an estimated value of $8000. She has a savings account in her name only at the Nutmeg Federal with a balance of $800, and a credit union savings account with a balance of $75. She has a 401K plan with a value of $41,973.26. The parties are in dispute as to the amount of alimony pendente lite arrearage owed by the plaintiff to the defendant. The parties have agreed that if they cannot stipulate to that amount then it will have to be resolved after the Memorandum of Decision in this case is filed.
The plaintiff is holding savings bonds in the approximate amount of $600 for each of the two children in their name. She is also holding a bank account for each child.
CT Page 8239
The court finds that under § 46b-93 that it has jurisdiction to make a child custody determination by initial decree, as this state had been the children's home state within six months before the commencement of the proceeding, and the children are absent from this state because of their removal and retention by the plaintiff who is claiming custody of the children, and that the defendant continues to live in this state.
At the present time, the two minor children from the marriage refuse to have any contact with the defendant and will not talk to her except on occasions such as Mother's Day.
The parties are in dispute as to what amounts each party owes the other for unreimbursed medical expenses during the time the children resided with such party. From the evidence presented, the court finds that equal amounts are owed by each party, and therefore the claims for unreimbursed medical by each party against the other are extinguished.
The defendant's gross weekly income without overtime is $614.82, and her net weekly income for child support guideline purposes without overtime is $455.60. Her gross weekly income including overtime is $768.92.
For the purposes of child support guidelines, the net weekly income of the defendant, including her overtime income, is $583.60, and the net weekly income of the plaintiff is $780. The recommended support for the defendant to pay to the plaintiff is $170 weekly. The defendant requests the court to deviate from the guidelines due to the defendant's overtime income and based on "other equitable factors," and based on the best interests of the children. The court finds that the presumption that the child support guideline amount is a correct amount has not been rebutted in this case. The court is including the defendant's overtime for purposes of calculating the child support guidelines.
During the marriage, the plaintiff's parents put a home they own in the name of the plaintiff and the defendant, and the defendant's parents did the same thing. The plaintiff quit claimed his interest in the home that came from the defendant's parents to the defendant and her sister in January of 1996. The defendant quit claimed her interest in the home that came from the plaintiff's parents to his parents. There is still an account that came from funds from the defendant's parents. Those funds CT Page 8240 were originally in an account in the names of both the plaintiff and the defendant. On January 18, 1996, the account was transferred to the defendant's name only. The parties are in dispute as to whether that account is actually an asset of the defendant.
The funds from the defendant's parents consisted of a transfer of funds on April 13, 1994 of $40,000 and a second transfer of funds on January 11, 1995 of $40,000. The balance due in the account as of February 5, 1998, with accumulated interest, was $94,780.21. Between the date the account was first set up, and the date the plaintiff closed out the account on January 18, 1996, neither party contributed any funds to the account and neither party withdrew any money from the account. The defendant's parents reimbursed the plaintiff and the defendant for the additional income tax that the plaintiff and defendant had to pay as a result of interest earned on the account. Further, the two family home located at 6 Clark Street, Danbury, Connecticut, that was transferred from the defendant's parents to the market value of $220,000 and no mortgage.
From all the evidence presented, the court finds that there was no intent on behalf of the defendant's parents to make a gift of $80,000 to her and/or her and the plaintiff, and therefore she does not have any legal interest in that bank account.
From all of the evidence presented, the court further finds that there was no intent on behalf of the defendant's parents to make a gift of the property at 6 Clark Street, Danbury, Connecticut, to her and/or her and the plaintiff, and therefore she does not have any legal interest in that property.
The court further finds, from all the evidence presented, that there was no intent on behalf of the plaintiff's parents to make a gift of the property that they transferred to the plaintiff and the defendant and that has since been transferred back to them.
From the evidence presented, the court finds that there is reasonable counsel fees owed to counsel for the minor child, and that each party owes to counsel for the minor child $2187.
The court has considered the provision of § 46b-82
regarding the issues of alimony, and has considered the provision of § 46b-81 (c) regarding the issues of property division, CT Page 8241 and has considered the provision of § 46b-56 regarding the issues of custody and visitation, and has considered the provision of § 46b-84 and the child support guidelines regarding the issues of support, and has considered the provision of § 46b-62 regarding the issues of attorney's fees. The court enters the following orders:
 ORDERS
A. BY WAY OF DISSOLUTION
1. The marriage between the parties is dissolved, and each party is declared to be single and unmarried.
B. BY WAY OF ALIMONY
1. The plaintiff is ordered to pay to the defendant alimony in the sum of $160 per week. Alimony shall terminate upon the earliest of the following events: (a) the death of the plaintiff; (b) the death of the defendant.
2. The provisions of § 46b-86 (a) and § 46b-86 (b) are applicable.
3. In accordance with § 46b-82, as security for the alimony order entered, the court directs that $10,000 from the plaintiff's share from the sale of the family home be placed into a joint savings account in the name of the entered, the court directs that $10,000 from the plaintiff's share from the sale of the family home be placed into a joint savings account in the name of the plaintiff and the defendant using the plaintiff's social security number so that interest will be taxable to him. For each year in which the plaintiff is current in his alimony payments at the end of such calendar year, he has a right to withdraw the interest from that account, and the defendant is to execute whatever documents are necessary for such withdrawal. The account is to require the signature of both parties for any withdrawal.
4. A contingent wage execution is authorized regarding the defendant's support obligation.
C. BY WAY OF CUSTODY AND VISITATION
1. The court awards sole custody of the minor children to the CT Page 8242 plaintiff.
2. The defendant is awarded reasonable rights of visitation.
D. BY WAY OF SUPPORT
1. The defendant is ordered to pay to the plaintiff support in the amount of $160 per week, which is substantially in accordance with the child support guidelines. Support payments shall continue until each child attains the age of eighteen. However, if a child is a full-time student and has not completed high school on that date, support shall continue through graduation from high school, but not beyond the age of nineteen years.
2. The plaintiff shall maintain medical insurance coverage for the minor children. The parties shall equally share the payment of unreimbursed medical and dental expenses incurred by the children.
3. Both the plaintiff and the defendant have life insurance as shown on their respective financial affidavits. The children are to be named as equal beneficiaries of all such life insurance until such time as each child attains the age of eighteen years.
E. BY WAY OF PROPERTY ORDERS
1. The family home is to be sold and, after payment of closing costs and the first mortgage, the proceeds of the sale are to be divided equally between the parties. The court retains jurisdiction over any dispute that may arise involving the sale of the family home.
2. Until such time as the family home is sold, the defendant has the right to exclusive possession of the family home. During the period she resides there, she is to keep the mortgage payments current.
3. All of the furniture and furnishings in the family home are awarded to the defendant except for the following items which are awarded to the plaintiff:
 (a) Children's jewelry, the children's miscellaneous possessions, the children's birth certificates, the minor child Paul's remote control helicopter and accessories. The computer CT Page 8243 and train set shall be turned over to the children for their use and shall be preserved for them by the parties.
 (b) The table saw, circular saw, sander and Sawzall tools, if those items are able to be located.
 (c) The plaintiff's books, passport, citizenship papers and other personal papers and his jewelry and Marshal Arts tapes, if those items are able to be located.
(d) The stereo system purchased by the plaintiff's father.
 (e) The Bradford plate collection is ordered divided equally between the parties.
 (f) The family photos and video tapes are ordered divided equally between the parties
 (g) All items awarded to the plaintiff are to be removed from the family residence by him by September 10, 1998, or the date the home is sold, whichever date is earlier.
4. The following assets are awarded to the plaintiff:
(a) Furniture and furnishings in his possession.
(b) Guns in his possession.
(c) Tools in his possession.
(d) First Chicago checking account.
(e) IRA with a balance of $35,644.41 as of June 4, 1998.
(f) 1996 Toyota.
 (g) The parties show various Nationwide Life Insurance policies with the plaintiff showing a cash surrender value in one policy of $2500, and the defendant showing a cash surrender value in one policy of $5385. The court orders that the first $2500 cash surrender value in the Nationwide policy shown on the plaintiff's financial affidavit is awarded to the plaintiff. Any excess cash surrender value on that policy is ordered divided equally between the parties. The defendant shows a cash surrender value of $5385 on a Nationwide policy in which the CT Page 8244 plaintiff is the named insured. Any such cash surrender value, if any, is awarded divided equally between the parties after the plaintiff has first received the $2500 awarded to him. The net effect of this order is that of the total cash surrender value in all of the Nationwide life insurance policies, the plaintiff is to receive the first $2500 and the balance, if any, is to be split equally between the parties.
 (h) The $18,300 IRA previously cashed in by the plaintiff is awarded to the plaintiff.
5. The plaintiff is not awarded any interest in the property located at 6 Clark Street, Danbury, Connecticut, or in the $94,780.21 People's bank account, as neither of those are assets of the defendant.
6. The parties entered into a stipulation during the course of the trial, dated June 5, 1998, which the court approved of. Paragraph one of the stipulation requests the court determine which parent shall have the obligation to hold in safeguard the gold coins until the children attain the age of majority, with each child being entitled to one-half of the gold coins. The court directs that the custodial parent, which in this case is the plaintiff, shall have that obligation. The stipulation further provides that the parties do not agree as to the amount of the alimony pendente lite arrearage, and that if counsel are unable to submit a stipulation fix in the amount of the arrearage, then the court shall retain jurisdiction and a hearing shall be held on the matter. The court orders that there be a hearing on that matter and that the arrearage is not merged into the judgment. The stipulation further provides that certain children's bank accounts are acknowledged to be the property of the children with the court to decide which parent should be the custodian of the accounts. There is an account for the minor child, Ashley Moraes, at the Union Savings Bank in which the defendant is a custodian with a balance as of January, 1997 of $4893.47. The defendant may remain as custodian of that account for her daughter. There is also an account with the plaintiff as custodian for the minor child, Paul Moraes, at the Union Savings Bank with a balance of $5848.90 as of January, 1997. The plaintiff may continue as custodian of that account for his son.
7. The court also appoints the plaintiff as custodial of all bonds that are in the names of the children.
CT Page 8245
8. The following assets are awarded to the defendant: (a) the 1988 BMW. The plaintiff shall execute whatever documents are necessary to transfer title to that vehicle into the name of the defendant; (b) jewelry in defendant's possession; (c) Christmas club; (d) vacation club; (e) Nutmeg Federal savings account in defendant's name only; (f) credit union savings account in defendant's name only; (g) 401K plan valued at $41,973.26.
9. The plaintiff is to pay the liabilities shown on his financial affidavit and hold the defendant harmless.
10. The defendant is to pay the liabilities shown on her financial affidavit and hold the plaintiff harmless.
11. The plaintiff is to hold the defendant harmless from any and all claims of his parents for moneys advanced to the parties during the time they were married.
12. The defendant is to hold the plaintiff harmless for any and all claims of her parents for moneys advanced to the parties during the time they were married.
13. All stocks, bonds and mutual funds that are identically shown on both the plaintiff's financial affidavit and the defendant's financial affidavit are ordered divided equally between the parties.
F. BY WAY OF ATTORNEY'S FEES
1. No attorney's fees are awarded in favor of either party.
2. The court directs that the joint Nutmeg Federal bank account in the amount of $4532 be used to pay the fee in full of Attorney Ellis with a balance due of $4374. The balance remaining in that account is ordered divided equally between the plaintiff and the defendant.
G. PENDENTE LITE ORDERS
1. Pendente lite orders remain in effect until the date this decision is filed. Any arrearages that may exist arising out of such orders are not merged into the judgment.
H. MISCELLANEOUS ORDERS
CT Page 8246
1. Counsel for the plaintiff is to prepare the judgment file within thirty days and send it to counsel for the defendant for signature and filing.
2. The parties are to exchange copies of their federal and state income tax returns by certified mail, return receipt, or registered mail, return receipt, within fifteen days after such returns have been filed for so long as there is any outstanding alimony and/or support order and/or any outstanding arrearage from any such order.
Axelrod, J.